IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMI TAN, | No. C 08-01564 MEJ |
| Plaintiffs, | **ORDER RE: DISCOVERY OF PLAINTIFF'S PSYCHIATRIC CONDITION** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, OFFICER BOBBY C. CHEUNG (#208), OFFICER WU (#18), AND DOES 1-40, | **ORDER RE: DEFENDANTS' WRITTEN DISCOVERY REQUESTS** |
| Defendants. / | |

The Court is in receipt of the parties' two joint discovery dispute letters, both filed on February 10, 2009. (Dkt. ##46-47.) After review of the parties' letter, the Court conducted a telephonic conference on March 2, 2009. (Dkt. #50.) The Court now issues the following order.

**A.     Defendants' Request for Discovery of Plaintiff's Psychiatric Condition**

In the first joint letter, Defendants move to compel discovery regarding Remi Tan's ("Plaintiff") psychiatric condition. (Dkt. #47.) Specifically, Defendants request that Plaintiff release his psychological records, answer deposition questions regarding any psychological conditions, and submit to an independent mental examination before the close of discovery on March 16, 2009.

Defendant seeks a psychiatric examination of Plaintiff for several reasons. First, Defendants contend that Plaintiff's claim for severe emotional injury entitles them to discovery regarding his mental condition. Second, Defendants argue that Plaintiff's psychological condition is relevant to explaining his behavior at the time of the incident and during his detention. Third, Defendants contend the information is relevant to determine Plaintiff's capacity to perceive the incident.

Plaintiff opposes the motion, arguing that he has not put his psychiatric and psychological condition at issue. Plaintiff further objects based on his right to privacy.

1. Legal Standard

Federal Rule of Civil Procedure 35(a) ("Rule 35") provides that the Court may order a party to submit to a mental examination for good cause shown and upon proper notice. Fed. R. Civ. P. 35(a). To permit such an examination, Defendants must establish that: (1) Plaintiff has placed his condition in controversy, and (2) good cause exists for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 116-17 (1964).

A plaintiff's mental or physical condition is "in controversy" when such condition is the subject of the litigation. *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D.Fla.1988). "Good cause" generally requires a showing of specific facts justifying discovery. Factors that courts have considered include the possibility of obtaining desired information by other means, whether Plaintiff plans to prove his claim through testimony of expert witnesses, whether the desired materials are relevant, and whether Plaintiff is claiming ongoing emotional distress. *See, e.g., Turner v. Imperial Stores*, 161 F.R.D. 89, 97-98 (S.D. Cal. 1995) (expert testimony); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal.1995) (ongoing emotional distress); *Schlagenhauf*, 379 U.S. at 118-19 (availability by other means).

In *Turner*, the district court conducted a thorough analysis of case law to determine whether a party's claim of "emotional distress" is sufficient to place that party's mental state in controversy sufficient to justify a Rule 35 examination. The court found that "garden-variety" emotional distress alone is not sufficient to place a party's mental state in controversy, explaining that Rule 35(a) was not meant to be applied in so broad a fashion as to allow courts to order a mental examination whenever a plaintiff claimed emotional distress. *Id.* at 97. Still, the court found that courts will order a mental examination where the case involves, in addition to emotional distress, one or more of the following: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress;

2

or (5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a). *Id.* at 95. Further, an alleged ongoing mental or emotional illness puts the claimant's mental condition in controversy. *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal.1995); *Turner*, 161 F.R.D. at 97.

Even if good cause is shown, it is still within the Court's discretion to determine whether to order an examination. *Stinchcomb v. United States*, 132 F.R.D. 29, 30 (E.D. Pa. 1990). Although the rule is to be construed liberally to allow the examination, the Court must take into account the interests of the party to be examined to avoid an unnecessary invasion of privacy balanced against the moving party's right to a fair trial. *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468 (N.D. N.Y.1994).

2. <u>Application to the Case at Bar</u>

Upon review of the parties' letter, the Court finds that a medical examination is warranted. In his Complaint, Plaintiff alleges that as a direct, legal and proximate result of Defendants' conduct, Plaintiff "suffered mental and emotional distress, including but not limited to frustration, worry, upset, distress, anxiety, feelings of depression, and nervousness . . ." (Dkt. #1, ¶30.) Plaintiff also claims ongoing emotional distress by alleging that, "Plaintiff suffered and continues to suffer serious damage, injury, and harm . . ." (Dkt. #1, ¶40.) Further, Plaintiff's Third Cause of Action is for Intentional Infliction of Emotional Distress. Thus, under the *Turner* factors, not only does Plaintiff have a cause of action for intentional infliction of emotional distress, he has placed his mental state in controversy by claiming mental anguish and emotional distress.

During the telephonic conference, Plaintiff stated that he would dismiss his cause of action for intentional emotional distress if the Court determines that this claim alone establishes good cause for an examination. However, even if Plaintiff were to dismiss this cause of action, the Court finds that good cause for an examination would still exist. One of the key disputes in this action centers around the reasons Defendant officers forcibly admitted Plaintiff to an inpatient psychiatric evaluation pursuant to a 72-hour Welfare and Institutions Code § 5150 ("section 5150".) Plaintiff alleges that Defendant officers "grabbed his arms, dragged him to the edge of the sidewalk and

3

1 'slammed [his] face into the curb,'" and unlawfully detained him. (Dkt. #47.)

2       In their defense, Defendants claim that the officers cited Plaintiff's comments and behavior as
3 reasons for detaining and admitting him for the evaluation. Defendants believed that Plaintiff
4 presented a danger to himself and the community for several reasons: (1) officers arrived at the
5 scene in response to an emergency 911 caller's description of Plaintiff running in and out of traffic;
6 (2) officers observed that Plaintiff experienced three severe mood swings; (3) Plaintiff stated that he
7 had not eaten in two days; (4) Plaintiff stated that he had taken heroin and felt dizzy; (5) Plaintiff's
8 wife stated, "Please don't hurt him, he didn't take his medication;" and (6) Plaintiff's son stated that
9 his father "sometimes is really nice and sometimes would go crazy." (Dkt. #47.)

10       Although Plaintiff disputes the officer's version of the facts, information concerning his
11 mental condition is relevant to challenge his capacity. Under Federal Rule of Evidence ("FRE")
12 607, a witness may be attacked by showing that he suffered from an infirmity that affected his
13 "ability to comprehend, know, and correctly relate the truth." Fed. R. Evid. 607; *United States v.*
14 *Jimenez*, 256 F.3d. 330, (5th Cir. 2001) (quoting *United States v. Partin*, 493 F.2d 750, 763 (5th Cir.
15 1974). The Court finds that the facts (e.g. emergency 911 call describing Plaintiff going in and out
16 of traffic, and statements made regarding his behavior) are both relevant to test his capacity to
17 perceive the alleged incidents and constitute good cause to warrant a mental examination. With this
18 background, Plaintiff's mental condition appears inextricably intertwined with the full story of this
19 case.

20       In invoking its discretionary powers to order an examination, the Court recognizes the
21 intrusion to Plaintiff's right of privacy. However, this right of privacy must be balanced against
22 Defendants' right to a fair trial. Fed. R. Evid. 403; *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468
23 (N.D. N.Y.1994). On balance, the Court finds that Plaintiff's right to privacy is outweighed by
24 Defendants' right to a fair trial because his mental health is key to Defendants' defense.

25       Based on this analysis, the Court hereby GRANTS Defendants' request for Plaintiff to submit
26 to an independent psychiatric medical examination, respond to deposition questions, and produce
27 psychological records. Plaintiff shall submit to an independent mental examination on mutually
28

4

convenient dates before the close of discovery on March 16, 2009. The results of these examinations shall be limited to this litigation.

**B.      Defendants' Written Discovery Requests**

In the joint letter regarding written discovery requests, Defendants seek a Court order compelling Plaintiff to produce responses to Defendant City and County of San Francisco's First Request for Production of Documents and First Set of Interrogatories, and Defendant Eddie Wu's First Set of Interrogatories. (Dkt. #46.) During the telephonic conference on March 2, 2009, Plaintiff offered to produce the responses and documents by 5:00 p.m. on that date. Accordingly, no further order is necessary unless Plaintiff has failed to comply with this obligation.

**IT IS SO ORDERED.**

Dated: March 4, 2009

_____
MARIA-ELENA JAMES
United States Magistrate Judge

5